UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALFRED MAYO,
    *Plaintiff*,

v.

No. 3:20-cv-00354 (JAM)

CITY OF NEW BRITAIN *et al.*,
    *Defendants*.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Alfred Mayo has filed this *pro se* action against the City of New Britain and nine

New Britain police officers. He claims in principal part that he was subject to false arrest, false

imprisonment, and malicious prosecution in violation of his rights under the Fourth Amendment.

The defendants have now moved for summary judgment. Because the undisputed facts

establish that the police had probable cause to arrest and initiate the prosecution of Mayo, I will

grant the motion for summary judgment with prejudice as to Mayo's federal law claims. I will

otherwise dismiss his remaining state law claims without prejudice for lack of federal

jurisdiction.

**BACKGROUND**

The following facts are drawn from the defendants' statement of undisputed material

facts and supporting exhibits.[1] On the morning of March 15, 2015, police officers were

dispatched to Mayo's home to investigate a complaint by Mayo that he had been harassed by

---

[1] As explained later in this ruling, I rely solely on the defendants' statement of material facts because it is supported by the evidence submitted by the defendants and because Mayo has not filed a statement of facts that properly contests these facts. My recitation of the facts in this ruling does not refer to the names of particular police officers because the issue of probable cause upon which this motion depends may be resolved without the need to distinguish between the acts and knowledge of any particular police officer defendants. *See, e.g., United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) *(*"an arrest ... is permissible where the actual arresting ... officer lacks the specific information to form the basis for probable cause ... but sufficient information to justify the arrest ... was known by other law enforcement officials initiating or involved with the investigation").

someone named Peter Ceglarz. Mayo told the police that at around 8:00 a.m. that morning he

was talking to someone across the street from Ceglarz's auto repair shop when Ceglarz

approached to question Mayo why he had told an employee of Ceglarz's that Ceglarz was a

racist. Mayo told Ceglarz that he never called him a racist and to mind his own business, but

Ceglarz told Mayo that he was going to sue Mayo, and Mayo responded that he would see

Ceglarz in court. *See* Doc. #24-3 at 1-2 (¶¶ 1-11).

The police asked Mayo if he had stated to anyone, including any of Ceglarz's employees,

that Ceglarz was a racist. Mayo said no. Mayo denied having contact with any of Ceglarz's

employees that morning, and Mayo stated in response to repeated questions that he had not

crossed the street to the side of the street where Ceglarz's shop was located. *Id.* at 2 (¶¶ 12-15).

The police learned a different version of events from other witnesses. They spoke to one

of Ceglarz's employees—Joe Reyes—who told them that Mayo had stopped and questioned him

at around 8:00 a.m. that morning outside of Ceglarz's auto shop. According to Reyes, Mayo

asked Reyes if he worked for Ceglarz, to which Reyes said yes, and then Mayo said: "do you

know the guy you work for is a racist?" Reyes then went to the shop where he told Ceglarz what

Mayo had said, and he saw Ceglarz start walking in the direction of Mayo. *Id.* at 3-4 (¶¶ 16-30).

The police also spoke to Ceglarz. According to Ceglarz, he learned from Reyes that

Mayo had called him a racist, and so he approached Mayo asking "what did you call me?" Mayo

did not answer the question, and Ceglarz told him he would be suing Mayo for calling him a

racist, to which Mayo responded "I'll see you in court." *Id.* at 4-5 (¶¶ 31-45).

Ceglarz also showed the police video surveillance footage from outside his auto shop.

The video confirmed Ceglarz's account that his encounter with Mayo took place on the same

side of the street as his auto shop rather than on the opposite side of the street as Mayo had

claimed. *Id.* at 5 (¶¶ 46-47).

One of the investigating police officers wrote a report recounting the steps of the

investigation and concluding that Mayo had falsely accused Ceglarz of harassing him:

> My preliminary investigation of Alfred Mayo's harassment complaint revealed that Mayo
> instigated the encounter by in fact calling Ceglarz a racist through an employee of his.
> Had Alfred Mayo not committed this act there would not have been any encounter
> between the two on this date. It appears that Alfred Mayo intentionally omitted this fact
> during my interview with him in an apparent attempt to characterize himself as a victim
> of an unwanted 'verbal threat.' My conclusion at this time was that no criminal threat or
> harassment occurred on this date originating from Ceglarz. I also concluded that it
> appears Alfred Mayo intentionally attempted to mislead my investigation by making the
> above referenced untrue statements.

Doc. #24-5 at 6.

The police applied for a warrant the next day to arrest Mayo on a charge of false

reporting in violation of Conn. Gen. Stat. § 53a-180c. The arrest warrant affidavit detailed the

facts as outlined above. Doc. #24-4. The affidavit concluded in relevant part that "Mayo gave

non truthful information in an attempt to mislead investigators and make it appear as if Ceglarz

had initiated contact while portraying himself as a potential victim," when in fact "Mayo did

initiate the contact with Ceglarz['s] employee, called Ceglarz a racist and lied when asked by

investigators about it." Doc. #24-4 at 4.

On October 19, 2015, a state court judge issued an arrest warrant on the basis of the

affidavit and concluding there was probable cause to arrest Mayo. Later that day Mayo turned

himself in, was booked and processed without incident and released on bond. Doc. #24-3 at 6-7

(¶¶ 57-60). According to Mayo, the charge was dismissed against him in March 2018. Doc. #65

at 16.

Mayo's amended complaint alleges both federal and state law causes of action. The

federal law causes of action pursuant to 42 U.S.C § 1983 include claims for false arrest, false

imprisonment, and malicious prosecution in violation of the Fourth Amendment. The state law

causes of action include negligent and reckless infliction of emotional distress, invasion of

privacy, and slander.[2]

The defendants have moved for summary judgment. Doc. #24. Mayo has filed objections.

Docs. #34, #65, #66.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well

established. Summary judgment may be granted only if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who

opposes the motion for summary judgment and then decide if those facts would be enough—if

eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing

party. My role at summary judgment is not to judge the credibility of witnesses or to resolve

close contested issues but solely to decide if there are enough facts that remain in dispute to

warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Pollard*

*v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

This Court's local rules prescribe the manner in which the factual record must be

presented for purposes of a motion for summary judgment. In essence, the party who moves for

---

[2] Although the complaint cites § 1983 only in connection with its first cause of action for false arrest, I assume that
the additional causes of action for false imprisonment and malicious prosecution are also intended to state a federal
law claim under the Fourth Amendment. As I have noted by way of an order to show cause at an earlier juncture in
this litigation, it appears that any false arrest claim would be barred by the statute of limitations, Doc. #9, but
defendants do not seek summary judgment at this time on statute of limitations grounds.

summary judgment must submit a factual statement in the form prescribed under Local Rule

56(a)(1), and the non-moving party must then file an opposing statement in the form prescribed

under Local Rule 56(a)(2). *See* D. Conn. L. Civ. R. 56(a)(1)-(2). Each asserted fact in a moving

party's statement must be "supported by the evidence" and if supported by evidence "will be

deemed admitted … unless such fact is controverted by" the opposing party's statement. *See* D.

Conn. L. Civ. R. 56(a)(1); *see also* Fed. R. Civ. P. 56(c) (detailing manner in which a party must

lodge an objection to dispute a fact asserted by the moving party).

The Court's local rules provide that factual statements "must be followed by a specific

citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other

evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)(3). The failure of either

party to cite specific evidence in their factual statements may warrant an adverse order against

the party that has not done so. *Ibid.*; *see also* Fed. R. Civ. P. 56(e) (allowing court to draw

adverse inference "[i]f a party fails to properly support an assertion of fact or fails to properly

address another party's assertion of fact as required by Rule 56(c)").

As the Second Circuit has made clear, when confronted "with a motion for summary

judgment adequately supported by affidavits, the party opposing the motion cannot rely on

allegations in the complaint, but must counter the movant's affidavits with specific facts showing

the existence of genuine issues warranting a trial." *Chamberlain Estate of Chamberlain v. City of*

*White Plains*, 960 F.3d 100, 118 (2d Cir. 2020) (internal quotations omitted). Nor may the

opposing party rely on "conclusory statements" or on "mere assertions that affidavits supporting

the motion are not credible to defeat a summary judgment motion." *Herlihy v. City of New York*,

654 F. App'x 40, 43 (2d Cir. 2016) (internal quotations omitted). Nevertheless, "[b]efore

summary judgment may be entered, the district court must ensure that each statement of material

fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).

Because Mayo is a *pro se* party, his submissions must be treated with special solicitude and afforded a liberal interpretation. *See Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). The Court's local rules ensure that a *pro se* party is thoroughly advised of the procedural requirements for opposing a summary judgment motion, *see* D. Conn. L. Civ. R. 56(b), and the defendants have complied with the rule's requirement to serve on Mayo a notice detailing the rules that govern a motion for summary judgment. Doc. #24-9. Moreover, I have extended the time by several weeks for Mayo to file proper opposition papers to the motion for summary judgment. Doc. #55.

I will first discuss Mayo's objections to the defendants' summary judgment evidence. Then I will turn to evaluating whether the defendants have carried their burden to show that there is no genuine issue of fact for trial.

### Mayo's evidentiary objections

Based on my review of the defendants' Local Rule 56(a)(1) statement, I am satisfied that each of the material facts it recites is supported by the evidentiary materials that the defendants have submitted with the filing of their motion. Although Mayo has filed a Local Rule 56(a)(2) statement to oppose the defendants' Local Rule 56(a)(1) statement, his statement does not cite specific evidence to contradict the truth of any of the defendants' assertions of fact. Doc. #65. Nor is his statement accompanied by any supporting evidentiary materials. Instead, his statement lodges numerous evidentiary objections that I will address below.

As an initial matter, it is important to note that "[m]aterials submitted in support of or in opposition to a motion for summary judgment must be admissible themselves or must contain

evidence that will be presented in admissible form at trial." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (internal quotations omitted). Here, the defendants have introduced certified copies of police reports, witness statements, and an arrest warrant affidavit. Docs. #24-4, #24-5, #24-6, #24-7, #24-8. Even assuming one or more of these documents may not be admissible in their present form at trial, the statements and information in these documents could be readily presented in admissible form at trial by means of the testimony of the police officers and witnesses whose statements are reflected in these documents. That is enough to allow me to consider these documents for summary judgment purposes. *See, e.g., Smith v. City of New York*, 697 Fed Appx. 88, 89 (2d Cir. 2017) (district court may rely on police reports at summary judgment because statements therein "could readily be reduced to admissible form at trial through the testimony of the defendant officers as to the underlying events in question").

Mayo primarily and repeatedly raises a hearsay objection to the defendants' evidence. The Federal Rules of Evidence generally prohibit the introduction of hearsay, which is defined as an out-of-court statement that is offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c) and 802. The hearsay rules apply not only at trial but also to the evidence adduced at the summary judgment stage of proceedings. *See, e.g., Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013).

The problem for Mayo, however, is that his hearsay objections all lack merit. To the extent he raises a hearsay objection to his own statements that he made to the police, the hearsay rule applies only to statements that are offered for the truth of the matter asserted, and the statements made by Mayo are not offered for their truth but for their falsity. After all, the basis for the charge against Mayo was that he furnished false information to the police. Because the defendants do not offer Mayo's statements to suggest that they were true, his statements do not

fall within the scope of the hearsay rule. *See United States v. Pedroza*, 750 F.2d 187, 203 (2d Cir. 1984) (noting that "[t]he testimony was not hearsay since it plainly was not offered to prove the truth of the matter asserted" but "[r]ather, the statement was offered for its patent falsity"). Moreover, the hearsay rule does not apply in any event to statements of a party opponent. *See* Fed. R. Evid. 801(d)(2)(A).

To the extent that the defendants rely on statements made to the police by third parties (such as the statements of Reyes and Ceglarz describing their encounters with Mayo), these statements are also not offered for their truth. Instead, they are offered simply for the fact that they were made to the police such that the police could have validly considered them as a predicate to determine if there was probable cause for Mayo's arrest. Indeed, when the issue at hand is whether there was probable cause for the police to conduct an arrest or search, the law is well-established that the rule against hearsay does not apply to statements made by third parties to the police that may bear on the issue of probable cause. *See Smith*, 697 Fed. Appx. at 89 (rejecting hearsay challenge at summary judgment to statements of a confidential informant as recited in a police report because "statements made by the confidential informant on which the officers relied in arresting Smith … are not implicated by the hearsay rule because they would not be offered for the truth of the matter asserted"); *Tuccio v. Papstein*, 307 F. App'x 545, 547 (2d Cir. 2009) (rejecting hearsay challenge on summary judgment to witness statements given to the police as recited in summary judgment affidavit and offered to show that the police had probable cause to arrest the plaintiff).

Mayo further objects that the police recorded his statements. But he does not identify any grounds to conclude that the police violated the law by recording what he told them. It is a routine and lawful investigative practice for the police to record their interactions with persons

during the course of their investigations. Although Mayo cites a state law that prohibits wiretapping, he overlooks that this state law includes an exception stating in relevant part that it "shall not apply to wiretapping by criminal law enforcement officials in the lawful performance of their duties." Conn. Gen. Stat. § 53a-187(b).

Mayo next objects that his statements are being used in violation of his *Miranda* rights. But it is a basic principle that the *Miranda* rule applies only to statements made by persons who are in police custody. *See, e.g., Mara v. Rilling*, 921 F.3d 48, 77 (2d Cir. 2019). Mayo called the police to his home so that he could lodge a complaint for harassment against Ceglarz, and he was not arrested until days later. Mayo has done nothing to show that he was in police custody at the time that he made any of the statements to the police that the police relied on as the basis for his arrest. So the *Miranda* rule is irrelevant to the admissibility of his statements for purposes of the defendants' summary judgment motion.

In short, there is no merit to any of Mayo's evidentiary objections. He does not otherwise properly controvert any of the defendants' facts as set forth in their Rule 56(a)(1) statement. Accordingly, I turn now to address whether the facts as established by the defendants are sufficient to warrant the grant of summary judgment.

### *Probable cause*

As noted above, Mayo's complaint alleges federal claims pursuant to 42 U.S.C. § 1983 for a violation of the Fourth Amendment by means of false arrest, false imprisonment, and malicious prosecution. It is well established that the existence of probable cause to arrest and prosecute is a complete defense to all of these claims. *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). The defendants argue that the record conclusively shows that there was probable cause for Mayo's arrest and prosecution.

What does it mean for a police officer to have probable cause? Long ago the U.S. Supreme Court held that "[p]robable cause exists where the facts and circumstances within [an officer's] knowledge and of which [the officer] had reasonably trustworthy information [are] sufficient in themselves to warrant [an officer] of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (internal quotation omitted). More recently, the Supreme Court has made clear that the probable cause standard is not a "high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Ibid.* (internal quotations omitted). "Because probable cause deals with probabilities and depends on the totality of the circumstances it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *Ibid.* (internal quotations omitted).

Mayo was arrested and charged under Connecticut law with falsely reporting an incident to the police. The statute he was charged with states in relevant part:

> A person is guilty of falsely reporting an incident in the second degree when, knowing the information reported, conveyed or circulated to be false or baseless, such person gratuitously reports to a law enforcement officer or agency (1) the alleged occurrence of an offense or incident which did not in fact occur… [or] (3) false information relating to an actual offense or incident or to the alleged implication of some person therein ….

Conn. Gen. Stat. § 53a-180c(a).

The undisputed factual record shows that the police had probable cause to arrest and prosecute Mayo for falsely reporting an incident. According to what Mayo told the police in an effort to show that Ceglarz had harassed him, Ceglarz had provoked a confrontation with Mayo by crossing the street to confront Mayo with a false allegation that Mayo had called Ceglarz a racist. But based on the interviews of Reyes and Ceglarz as well as a review of surveillance video, the police had grounds to conclude that it was Mayo—not Ceglarz—who had provoked

10

the confrontation by telling one of Ceglarz's employees that Ceglarz was a racist. The police had

reason to conclude that Mayo's account to them was knowingly false and gratuitously reported to

the police to wrongfully implicate Ceglarz with a charge of harassment.

It is no answer for Mayo to say that he does not agree with the accounts given to the

police by Reyes and Ceglarz. The probable cause inquiry is an objective inquiry, and when the

police are confronted with conflicting witness accounts about what happened, courts do not

second-guess a police officer's decision to credit one witness's account over another in the

absence of facts to show why no objectively reasonable officer could have resolved the

conflicting accounts as the police did. As the Second Circuit has explained, "[p]robable cause

does not necessarily disappear simply because an innocent explanation may be consistent with

facts that an officer views as suspicious," and "[t]he officers were not required to accept [any

particular witness's] account on faith" but "were entitled to weigh [the witness's] explanation …

against the facts on the other side of the ledger." *Figueroa*, 825 F.3d at 102 (internal quotations

omitted); *see also Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (same;

notwithstanding plaintiff's claim of innocence, police had probable cause to arrest plaintiff for

assault on grounds of contrary statements of two witnesses). Moreover, "[o]nce a police officer

has a reasonable basis for believing there is probable cause, he is not required to explore and

eliminate every theoretically plausible claim of innocence before making an arrest." *Curley*, 268

F.3d at 70 (internal quotations omitted).

In short, the summary judgment record conclusively shows that the police had probable

cause to arrest and prosecute Mayo. The existence of probable cause defeats any claim against

the individual police officers as well as against the City of New Britain. *See, e.g., Garcia v.

Bloomberg*, 662 Fed. Appx. 50, 53-54 (2d Cir. 2016). Accordingly, I will grant the defendants'

summary judgment motion as to Mayo's federal constitutional claims for false arrest, false imprisonment, and malicious prosecution.[3]

### *State law claims*

Mayo's only remaining claims are state law claims. "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd of Trade of N.Y.C.*, 464 F.3d 255, 262 (2d Cir. 2006). I decline to exercise supplemental jurisdiction over Mayo's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). This ruling is without prejudice to Mayo's right to seek any available relief in the Connecticut state courts.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the defendants' motion for summary judgment (Doc. #24) to dismiss the federal law claims with prejudice and to dismiss the state law claims without prejudice for lack of jurisdiction. The remaining motions (Docs. #57, #110, #125, #130) are DENIED as moot in light of the dismissal of this action. The Clerk of Court shall close this case.

It is so ordered. Dated at New Haven this 22nd day of February 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[3] Because the record conclusively establishes probable cause, I need not address whether the individual defendants are entitled to qualified immunity on the grounds that they had at least arguable probable cause and were entitled to rely on the arrest warrant issued by a state court judge. *See Betts*, 751 F.3d at 82-83; *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). Nor need I consider whether any violation of constitutional rights by the police was the product of a municipal policy or custom to allow for *Monell* liability to be imposed against the City of New Britain. *See Agosto v. New York City Dept. of Educ.*, 982 F.3d 86, 97-98 (2d Cir. 2020).